UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT OF DAVID SEMROW and PATRICIA SEMROW, AS OWNERS OF A 1991, 19 FOOT MIDLAND VESSEL (H.I.N. CGR00359E191), FOR EXONERATION FROM OR LIMITATION OF LIABILITY | : : : : : : : : | CIVIL ACTION NO. 3:09-cv-1142 (VLB)<br><br>March 31, 2011 |

## MEMORANDUM OF DECISION GRANTING IN PART THE PETITIONERS' MOTION FOR SANCTIONS [DOC. #16] AND DENYING THE CLAIMANT'S MOTION FOR PERMISSION TO FILE LATE RESPONES TO PETITIONERS' REQUESTS FOR ADMISSION [DOC. #36]

Before the Court are Petitioners David Semrow and Patricia Semrow's (hereinafter referred to as "the Petitioners") pleading titled Motion for Dismissal of Claimant Virginia Turner, as Administratrix for the Estate of Arthur Turner's Claim ("hereinafter the Estate"), and Answer and/or Sanctions Due to Spoliation of Evidence. [Doc. #16]. The Petitioners assert that as established by Requests for Admissions dated December 22, 2009, and December 23, 2009 ("the Requests)", deemed admitted due to the Estate's failure to respond, the Estate spoliated essential evidence relating to this matter, namely a 1991, 19 foot Midland Vessel ("the Vessel"), and that sanctions up to and including dismissal are appropriate. The Estate objects, noting that the Petitioners seek an extreme form of relief that goes beyond the rationale underlying the spoliation doctrine, as any spoliation by the Estate did not reflect bad faith or intentional conduct. The Estate further contends that any prejudice to the Petitioners is mitigated by the

1

existence of an official Connecticut Department of Environmental Protection ("DEP") investigation and report documenting the condition of the Vessel. Before the Court is also the Estate's Motion For Permission to File Late Responses to Petitioners Request for Admissions [Doc. #36], by which the Estate seeks leave to file overdue responses to the Requests asserting that the Petitioners cannot show that they have been prejudiced by the delay in the Estate's filing of its proposed response and that "the interests of justice in rendering a determination of the claims presented on the basis of all relevant evidence will only be served through the allowance of these late filed responses." [*Id.*]. The Petitioners object, noting that the Estate's delay of approximately eight months is inexcusable as the Estate fails to provide a good faith basis for its failure to respond and that the Petitioners "have been clearly prejudiced in expending thousands of dollars in pursuing their Motion to Dismiss based on spoliation of evidence." [Doc. #34].

## Background

On October 16, 2007, the Vessel capsized in the waters of the Long Island Sound, resulting in the deaths of Mr. Turner and an occupant named Irina Sheyner. The Estate notes that the Connecticut DEP's Boating Accident Reconstruction Unit conducted an investigation of the incident and that the Vessel was subsequently brought to a location known as the Old Harbor Marina. On November 29, 2007 Ms. Turner was appointed Administratrix of the Estate.

2

The Petitioners have provided evidence that Virginia Turner first met with her current counsel, although unclear it as to what matter she did so, on or before May 8, 2008. [Doc. ##33, Attach. 1]. At some time during the fall of 2008, the Vessel was disposed in an unknown manner due to a failure to pay storage charges to the marina, and to claim ownership of the Vessel. [Doc. #17]. On April 24, 2009, the Estate listed the Vessel as an asset in its initial inventory of assets as part of a probate filing. [Doc. #33, Attach. 2]. On June 12, 2009, Ms. Turner retained her present counsel in connection with a wrongful death suit that was filed in the Superior Court for the Judicial District of Hartford. On July 21, 2009, the Petitioners filed a Complaint [Doc. #1] pursuant to 46 U.S.C. § 30501, *et seq.*, seeking Exoneration From or Limitation of Liability. [Doc. #1].

On August 27, 2009 the Court issued an order instructing all persons asserting claims with respect to the capsizing of the Vessel to file such a claim with this Court on or before October 15, 2009. [Doc. #9]. On October 9, 2009, the Estate filed an answer and claim alleging that Mr. Turner's death resulted from the conditions of the Vessel and that David Semrow sold the boat to Turner in that unseaworthy condition. The Estate claims Negligence and Breach of the Covenant of Good Faith and Fair Dealing and alternatively Wrongful Death Pursuant to Connecticut General Statute § 52-555. [Doc. #14].

On November 24, 2009, the Petitioners served a Request for Inspection of Things and the Estate then advised that the Vessel and its contents no longer existed. [Doc. #19]. The Petitioners further note that they served additional

3

discovery, including the Requests, on December 22 and 23, 2009. The Estate did not respond to the Requests, and the Petitioners filed the subject motion to dismiss on May 18, 2010. Nearly eight months after the Requests were filed and three months after the Petitioners' motion to dismiss was filed, on August 19, 2010, the Estate filed the pending motion for leave to file responses to the Requests. [Docs. ##30, 36]. The Requests include admissions that both Virginia Turner and the Estate failed to preserve or take efforts to preserve the Vessel, and also that the "Vessel, its equipment and appurtenances constitute critical evidence without which a proper and complete evaluation and resulting cause of the incident cannot be made or determined." *Id*. In its proposed responses, the Estate admits that the Vessel no longer exists and that both Virginia Turner and the Estate did not take affirmative steps to preserve the Vessel nor the equipment and appurtenances that were on board the Vessel, but seeks to resurrect the factual question of whether the cause of the October 16, 2007 capsizing can be determined without examination of the Vessel by asserting that the Estate can neither admit nor the deny the truth of the request to admit. [Doc. #30, Attach. #2].

## Analysis

### The Petitioners' Motion for Sanctions

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or

reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Pursuant to Federal Rules of Civil Procedure Rule 37(b), federal district courts may impose sanctions against a party that has spoliated evidence in breach of a court order, and in the absence of a court order, pursuant to its inherent power to govern litigation. *Id.* While noting a court's broad discretion, the Second Circuit has stated that a "sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Id.* (internal citations and quotation marks omitted). Complete dismissal of a case is within a court's discretion upon demonstration of "willfulness, bad faith, or fault on the part of the sanctioned party[.]" However, "because dismissal is a drastic remedy, it should be imposed only in extreme circumstances, usually after consideration of alternative less drastic sanctions." *Id.* (internal citations and quotation marks omitted). The Court will therefore consider lesser sanctions and will utilize dismissal only if such sanctions fail to meet the three noted objectives.

Although a lesser sanction than dismissal, an adverse inference instruction "often ends litigation" as it may be "too difficult a hurdle for the spoliator to overcome" and therefore is "an extreme sanction and should not be given lightly." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 219-220 (S.D.N.Y. 2003). Accordingly:

**A party seeking an adverse inference instruction (or other sanctions) based on the spoliation of evidence must establish the following three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a "culpable state of mind" and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.**

*Id.* at 220 (internal citations and quotation marks omitted). The Court will address each factor in turn.

*Obligation to Preserve*

A preservation obligation "arises when the party has notice that the evidence is relevant to litigation - most commonly when suit has already been filed, providing the party responsible for the destruction, with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." *Orbit One Commc'ns Inc. v. Numerex Corp.* 271 F.R.D. 429 (S.D.N.Y. 2010) (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998), *overruled on other grounds, Rotella v. Wood*, 528 U.S. 549 (2000)). Further, for spoliation purposes, a culpable state of mind includes ordinary negligence. *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 108 (2d Cir. 2002). In this case, although the destruction occurred prior to the commencement of a suit, the Estate should have known of the evidence's potential relevance to future litigation, particularly as a situation involving fatalities through suspected capsizing of a Vessel made litigation likely if not certain. Further, the Estate's April 24, 2009 probate filing

6

suggests that the Estate knew it had a duty to preserve the Vessel.

*Culpable State of Mind*

Where one seeks an adverse inference, the Second Circuit applies a case-by-case approach for determining what constitutes a sufficiently culpable state of mind. *Byrnie v. Town of Cromwell*, 243 F. 3d 93, 107-108 (2d Cir. 2001). Proof of intentional destruction of evidence, bad faith, gross negligence, and even simple negligence can establish a culpable state of mind. *Residential Funding*, 306 F.3d at 108. "This standard protects the innocent litigant from the destruction of evidence by a spoliator who would otherwise assert an 'empty head, pure heart' defense." *Orbit One*, 271 F.R.D. at 438. As explained by the Second Circuit:

> [The] sanction [of an adverse inference] should be available even for the negligent destruction of documents if that is necessary to further the remedial purpose of the inference. It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanism for restoring the evidentiary balance. The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss.

*Residential Funding*, 306 F.3d at 108 (citations omitted). The Court could conclude that the Estate acted intentionally or in bad faith, or at a minimum was grossly negligent. The November 25, 2007 DEP investigation report identified several possible contributing factors which could have caused the Vessel to capsize, including the decedent's negligence in manipulating the anchor's rope. [Doc. #24, Attach. 2]. The Administratix was at best derelict in her fiduciary

7

duties by failing to pay the storage charges and claim ownership for the Vessel. *See Bender v. City of Rochester*, 765 F.2d 7, 12 (2d Cir. 1985) (administrator of estate has a legal duty to collect and preserve decedent's assets); *see also* Conn. Gen. Stat. § 45a-199 (administratix is a fiduciary to the decedent's estate). This is particularly true in light of Connecticut's notice requirements regarding the abandonment of vessels on the waters of Connecticut or on another's property without consent:

> . . . For the purposes of this section, a vessel shall be presumed to be abandoned if left on the waters of this state not moored, anchored or made fast to the shore and unattended for a period greater than twenty-four hours, or left upon property other than his own without the consent of said property owner for a period greater than twenty-four hours. . . . The owner or keeper of any marina or other place where such vessel is stored shall have a lien upon the same for his storage charges and if such vessel has been stored for a period of not less than sixty days, such owner or keeper may sell the same for storage charges owed thereon, provided a notice of intent to sell shall be sent to the Commissioner of Environmental Protection, the Commissioner of Motor Vehicles, Commissioner of Transportation and the owner of such vessel, if known, five days before the sale of such vessel. If the owner is unknown, such sale shall be advertised in a newspaper published or having a circulation in the town where such marina or other place is located three times, commencing at least five days before the sale. . . .

Conn. Gen. Stat. § 15-140c.

*Relevance*

A spoliator's state of mind in turn dictates the evidence required to support an adverse inference instruction:

> Where a party destroys evidence in bad faith, that bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that

8

> party. Similarly, a showing of gross negligence in the destruction or untimely production of evidence will in some circumstances suffice, standing alone, to support a finding that the evidence was unfavorable to the grossly negligent party. Accordingly, where a party seeking an adverse inference adduces evidence that its opponent destroyed potential evidence (or otherwise rendered it unavailable) in bad faith or through gross negligence (satisfying the "culpable state of mind" factor), that same evidence of the opponent's state of mind will frequently also be sufficient to permit a jury to conclude that the missing evidence is favorable to the party (satisfying the "relevance" factor).

*Residential Funding*, 306 F.3d at 109. In turn, where the destruction of evidence is due to negligence, as opposed to bad faith or gross negligence, relevance must be proven by the party seeking the sanctions. *Zublake*, 220 F.R.D. at 220. In this context, relevance:

> means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence. Rather, the party seeking [sanctions] must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed . . . evidence would have been of the nature alleged by the party affected by its destruction.

*Residential Funding Corp.* 306 F.3d 99, at 108-109 (internal citations omitted). In this case the Petitioners have provided an expert affidavit adducing that

> [d]ue to the fact that the vessel and its equipment were not preserved following the accident, I am unable to conduct a proper and complete investigation into, and evaluation of, the accident that resulted in the death of Mr. Arthur Turner. Therefore it is not possible to determine the cause of the sinking of Mr. Turner's vessel. Secondary evidence such as photographs, measurements, and other documentation and deposition testimony are inadequate to perform the proper evaluation and testing necessary. . . .

[Doc. #18].

The Vessel would likely contain exculpatory evidence which may have limited, if not eliminated, the Petitioners' liability. As noted, the Estate asserts

9

that the Petitioner is not prejudiced by the destruction of the Vessel because equally probative evidence exists in the form of "a thorough investigation performed by an independent, neutral, state agency into the cause of the capsizing of the subject vessel" and that "[t]he investigation and report . . . contains numerous photographs, measurements and other data as well as the investigator's application of that data to his training, experience and education, resulting in his independent neutral conclusion as to the cause of the capsizing of the vessel." [Doc. #24]. The Estate further asserts that the Petitioners can use their expert to "dispute, attack and contradict the findings of the report and may attempt to show the weaknesses or errors, if any, in the investigation . . . performed." [*Id.*]. The Court first notes that the referenced report is inadmissible in this proceeding as a matter of law:

> Notwithstanding any other provision of law, no part of a report of a marine casualty investigation conducted under section 6301 of this title, including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or subject to discovery in any civil or administrative proceedings, other than an administrative proceeded initiated by the United States.

46 U.S.C. § 6301(a).

The Court notes that Officer Hill, the author of the DEP report, may be permitted to testify concerning his investigation in his capacity as a DEP officer as opposed to in the capacity of a member of the United States Coast Guard, or in any event through express authorization from the Secretary of Transportation. *See* 46 U.S.C. § 6301(b) (noting that "[a]ny member or employee of the Coast Guard investigating a marine casualty pursuant to section 6301 . . . shall not be

subject to deposition or other discovery, or otherwise testify. . . without permission of the Secretary. . . .").

However, even if Officer Hill's testimony is admissible the Court notes that his testimony as evinced by his report is inconclusive. First, the investigator could not determine whether the Vessel was modified as the manufacturer is no longer in business and he was not able to locate the manufacturing specifications. Second, the report cites several potentially contributing factors, including human error, as possible causes of the Vessel's capsizing, without opining as to the weight attributable to each one. Therefore, the existence of the DEP report fails to mitigate the effect of the Vessel's spoliation.

The Petitioners' inability to have an expert examine the vessel to make an assessment of the true cause or relative causes of its sinking or the proper allocation of liability is highly prejudicial as Connecticut is a comparative negligence state in which a negligent party cannot recover from a less culpable tortfeasor, and maritime law provides that a tortfeasor may seek contribution, indemnification, or apportionment from one who may be comparatively negligent or a joint tortfeasor. Conn. Gen. Stat. § 52-572h; *Szollosy v. Hyatt Corp.* 208 F. Supp. 2d 205, 214 (D. Conn. 2002).

Therefore, the Court grants the Petitioners' Motion for Sanctions but concludes that the record is insufficient to support dismissal. Instead, the Court rules that the jury will receive an adverse inference instruction at trial.

### Estate's Motion for Leave to File Late Responses

With regard to the Estate's request for leave to file late responses, the Court notes that pursuant to Federal Rule Civil Procedure Rule 36(a)(3), requests for admission are deemed admitted within 30 days after being served. As responses were not provided within that time period and a request for additional time was not sought prior to the expiration of that time period, the matters proposed for admission are currently deemed admitted. The Court has not found and the Estate has provided no legal authority to the contrary, therefore the Court denies the Estate's motion for extension of time [Doc. #16] but treats the Estate's request and proposed responses as a request to amend its response pursuant to Federal Rule of Civil Procedure 36(b). That rules provides:

> A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. . . . [T]he court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. . . .

Fed. R. Civ. Pro. 36(b). The Court is not persuaded that permitting the Estate to file a response would promote the presentation of the merits of this case in view of the Vessel's spoliation, which has deprived the parties of the ability to determine the merits of the Estate's claims. The Estate seeks to deprive the Petitioners of their ability to defend themselves and expunge its admission of the Petitioners' lack of culpability. Moreover, pursuant to Federal Rule of Civil Procedure 1, which commands that the Rules are to "be construed and administered to secure the just, speedy, and inexpensive determination of every

12

action and proceeding," Fed. R. Civ. Pro. 1, granting the Estate leave to amend its responses as proposed unjustifiably delays and increases the expense in culminating this dispute. Such leave is therefore denied.

Conclusion

Pursuant to the foregoing analysis, the Petitioners' Motion for Sanctions is GRANTED in part, and the Estate's Motion for Permission to File Late Responses is DENIED. The Court will give the jury an adverse inference instruction at trial.

IT IS SO ORDERED.

       /s/       
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 31, 2011.